The argument on the calendar is number 2832, United States v. Graham. Good morning. May I proceed? Whenever you're ready. Thank you. Good morning. May it please the court. My name is Harry Sandick. I'm from Patterson, Belknap, Webb, and Tyler, and I represent Jacqueline Graham pursuant to an appointment under the Criminal Justice Act. I want to focus today on two of the issues we've briefed. One is the ineffective assistance of counsel in plea negotiations, and the other issue is the admission of out-of-court statements by a lawyer who accused our client, Graham, of committing a crime. On the ineffective assistance claim, this case is different from the ordinary ineffectiveness claim brought on direct appeal because there was a factual record developed by Judge Roman. He said something like, I want to make sure that we're not back here again, and so he actually did conduct colloquy with counsel, with the defendant, and with the government on this question, and the record is crystal clear that the performance was deficient. Wasn't colloquy with counsel the second counsel, not the one whose ineffectiveness is being claimed? There was colloquy with the counsel whose effectiveness was questioned. His name, and I may be mispronouncing this. So there was ineffective assistance of counsel presented to the judge while first counsel was still in the case, and the judge addressed first counsel. It was not presented as an ineffectiveness claim. It was fact-finding by the court about whether or not a plea offer had been made. Judge Roman, I think mindful of Frye and Laffler and this court's decisions, said that he wanted to explore this issue because the letters from the government made it clear that the offer might not have been conveyed. And what he found when he discussed it was, and this is page 93 of the transcript, that first of all, the defense counsel did not share the actual offer with Graham until April 10th. And just to put this in context. You mean in precise terms or as opposed to saying I have an offer of X? In precise terms until April 10th, and in general terms until after the offer had expired. When was counsel replaced? Counsel was replaced on April 10th, the day of this hearing. The day of the conference. Right. So the conference was April 10th. The government's plea offer was dated February 22nd. Can I take you the other way in the chronology? The trial is the beginning of June, right? That's right. So between early April and early June, there's two months when this issue has been aired. New competent counsel is aware of it. Defendants aware of the offer. The court is aware of the offer. And but there's. Well, is that all right? And then they proceeded to trial anyway. Well, a piece of that, Your Honor, I would not exactly agree with, which is whether the offer was still there, I think is an important part of this issue. And the government said on at least four or five occasions in the April 10th conference that the offer was taken off the table. They said we don't bid against ourselves. The longer she waits, the less likely this can benefit her. And they said we might consider some ambiguity there, I guess. Did she ask for any relief from the court in that two month interval? It does not appear that she to us that she asked for any particular relief from the court at that time. So what relief are you asking for now after trial? Sure. Lafleur says that the correct remedy in this is page 174 of the Lafleur opinion. The correct remedy in these circumstances is to order the state to reoffer the plea agreement. That's what was done in Lafleur. What's wrong with proceeding, doing what we normally do in these cases? Having you having you bring a 2255 after the fact and then all of these issues can be properly aired under those circumstances. So, Your Honor, yes, that is more often than not, much more often than not, that is what the court does. In another case, however, called Galanis a couple of years ago, which I concede was a summary order and not of precedential impact. But in that case, it was quite clear from the record as it is here that the offer was not conveyed to the defendant until after it had expired. And what the panel in Galanis did was a Jacobson remand to let it go back and to not make the case wait procedurally a long time. Right. But it's not just what what the attorney did that's at issue. It's also whether there was prejudice. And you get a finding of prejudice on that from the district court before it comes up to us in a 2255. So, Your Honor, the question of prejudice here of the four part test, the only part that's really contested is, is there a reasonable probability she would have taken the offer? My client. And in this case, she says even at the time through counsel, through the outgoing counsel, that she wanted some time to consider the offer, wanted to do some research. She complained about the delay in sending it to her. Why do those things if there wasn't at least a reasonable probability of her accepting it? All of her code defendants. Why did she ask for that in the two month period before trial? When she was aware that the offer was out there, that she hadn't gotten it, but decided to go to trial? Well, there's no record of that, of why she did not, if she did not ask the government at trial, she could have asked the court. Sorry. On that point, whose burden is it to establish an indicia of prejudice in this case? And I'm in addition to the fact that she didn't ask to reopen the plea. How do we know that she would have gotten a shorter sentence? Well, I don't think that there is certainty that she would have gotten a shorter sentence. But what we do know is this, her guidelines range was a level 39. She got a longer sentence than all of her code defendants. To the extent, I don't understand the government to be contesting the question that she would have been eligible for a shorter sentence under the terms of their plea. Before she put them through a trial, right? I'm sorry? Before she put them through a trial, right? Well, that's right. And the offer disappeared. She did not have the opportunity that her code defendants had, all of whom pled guilty. And she didn't have the opportunity because her lawyer, who candidly admitted that he did not convey. What's the evidence that the government would not have reinstated the offer had she requested it? Well, the evidence is this. When the government was asked about reinstating the offer, and Judge Roman, it's hard to read minds, but seems to be trying to encourage perhaps the government to kill this issue by re-extending the offer for a few days. The government said, it's been taken off the table. We don't bid against ourselves. We don't keep making new plea offers. And they said there might be some alternative way of structuring a plea, which to my ear sounds like a longer sentence than what they offered. So the government had the opportunity to offer it right then. So I guess my concern is that your client could have, before trial in the two months between this conference and the beginning of trial, requested what you're asking for now. Can you make the government re-open, re-offer the deal? And didn't. Instead chose to roll the dice on trial. And that seems to me to be a waiver. And I'm wondering why that's not right. Well, it shouldn't be a waiver, Your Honor, because there's no proceeding in which she affirmatively waived her right to effective assistance of counsel. She chose to go to trial knowing that she could have asked for the re-opening of the plea offer, which is what you're asking for now, after all of that is over. Well, that was true in Lafler, too, I believe, where the court addressed directly the question of can you present this type of claim after you decide to go to trial? And the court said yes. So I don't think that I'm. That's not the point that Judge Park is making. There was a two-month delay, two-month period before trial, and when she knew the situation, and she decided to go to trial without objection or without making a motion to have the offeror reinstated or whatever. Well, the ineffectiveness was complete by April 10th. But where's the prejudice? The prejudice is that had she taken this offer, there would have been a different outcome in terms of her sentence in the case. So it's the four elements of prejudice in Lafler and Frye. And the only one that's really contested here is is there a reasonable probability she would have taken the offer? And she said she wanted to consider it. She expressed distress about the fact that she was not given this offer. So the ineffectiveness was complete by April 10th. And there's nothing in the law that says that she had the obligation to essentially go back to the government and see what they would do. The government made it clear that, you know, the offer was gone. So the ineffectiveness. Well, she certainly didn't have the obligation, but she also didn't have the obligation to come before us and asking us to rule on her behalf because of ineffective assistance of counsel, right? Well, you know, the Supreme Court and this court have been very clear. Counsel is supposed to share a plea offer with client. That's the essence of effective assistance in the plea period. And that didn't happen here. So that's why we're here. And on the question of prejudice, the standard is only whether there was a reasonable probability that she would have taken the offer if she had known about it at the time. And even based on the transcript here from Judge Roman in April of 2019. What if she what if she had said, I hear about the offer. I'd like to consider it, but I'm inclined to go to trial. I think I'd like to go to trial. And then and then we're in that position. And why isn't what what happened here indicative of that of that attitude? And why can't we draw that inference? Well, the court shouldn't draw the inference because the offer was withdrawn. There was nothing for her to accept. And at that point, the ineffectiveness was complete. There's no law that says that she had an obligation to then go back to the government and say, can you make me some offer? And it doesn't appear from the record the government did re-extend the offer. Well, ineffective assistance of counsel was not directly at issue at that point. I mean, the facts that you say the facts were at issue. But but the ineffective assistance of counsel, which includes prejudice, was not at issue at that point. And so doesn't that really indicate the propriety of having a full airing of this in the district court by by by a habeas, a habeas proceeding? Your Honor, we're what we are proposing is, as in Golanus, where there was also factual evidence that it go back for Jacobson remand, because we have a fairly narrow and specific issue that would need to be addressed on the remand and that it doesn't. What's that issue? Whether there was a reasonable probability that she would have accepted the offer. I think that's really the issue that's being contested here. And I think that in Golanus, the court recognized that the record was clear there, as I think it is here, that the offer was not extended to her. There was no consultation with counsel. And so there was a Jacobson remand for the purpose of addressing this issue. I think that would be a better outcome than making her wait until the end of her appeal, filing a new proceeding while she's continuing to serve her sentence. I see my my time is up. You've reserved two minutes for rebuttal. Thank you. Thank you. We'll hear from the government. The court ready whenever you're ready. May it please the court. My name is David Felton and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal. I was counsel to the United States in the proceedings below. Your Honor, the judgment of conviction should be affirmed when jump right into the ineffective assistance claim. And I want to emphasize the posture of this claim. Ineffective assistance was not raised below. Period. There was no ineffective assistance record made. There was no ineffective assistance hearing. Your adversary says that anything that would be presented at a hearing was de facto presented below, even though it wasn't denominated in effect an ineffective assistance of counsel claim. In other words, there's nothing more to be learned. Respectfully, Your Honor, the government disagrees with that. Because as part of Strickland, the ineffective assistance inquiry says that the court must consider the totality of the evidence. And here there's just a lot of unanswered questions, in part because the issue wasn't raised below. There wasn't fact finding below. There wasn't a full on hearing below. Some of these issues include, among other things, what the plea offer said, the date it expired. Doesn't that speak, though, for the need for a Jacobson remand? The fact that there are so many unanswered questions and the fact that I think we would all agree that not actually getting the terms of the plea agreement is problematic. And at least that part is ineffective. Your Honor. So the Jacobson remand is a pretty rare remedy for ineffective assistance claims. Virtually every ineffective assistance claim proceeds in this circuit and in many other circuits via the ample remedy, as this court said in Doe, of a 2255 proceeding. The only example cited in opposing counsel's brief about Jacobson remand was the Galanis case that we heard today. And I think Galanis shows almost the opposite of what we had here. In Galanis, the defendant there was a plea offer was extended to an unrepresented defendant. There was a record that the defendant was unaware of that plea offer. And then upon appointment of counsel, not just effective counsel, any counsel at all, that defendant, a number of months later, accepted a very similar plea offer. But in this instance, the record is at least partially developed, right? So doesn't that seem to be a better use of judicial resources than waiting for it to come back up to us on a 2255? No, Your Honor, because what would what would effectively occur via Jacobson remand would be a full on habeas proceeding or sorry, would be a full on ineffective assistance proceeding on both Strickland fronts. Ineffective assistance as well as prejudice. And on ineffective assistance. But we don't have anything in the record because it wasn't raised below is the actual import of this potential. Would you dispute that failing to give a client the terms of the plea is at least meeting the first step? If if that was demonstrated in the record, we would concede that that demonstrated the first step. However, here that is not clear. Counsel said he conveyed the terms in March to be sure. The defendant said it was not conveyed until the end of March. There was no factual findings on that below. So the record is at least unclear on that point. And the record on prejudice, as well as we stand, it is pretty strong in favor that the defendant was not prejudiced. What we had was new counsel was not been alleged to have been ineffective, making clear on the record at the final pretrial conference in May, seven weeks after his appointment, that he had discussed the possibility of a plea with the government. While standing next to his counsel, he said she was not interested in any plea offers. He had not asked to reopen the expired offer or to make any new offers. So on this record, coupled with prior counsel's statement at the conference in April that all along, Miss Graham has been asserting her innocence. We've got strong record evidence that that there is no probability or a reasonable probability that the defendant would have accepted the plea offer. We also don't have evidence in the record about what the negotiations occurred upon new counsel's appointment in April. For instance, there is discussions in the record about a reverse proffer and a full record below as part of a 2255 proceeding. As these claims ordinarily arise, for instance, the government may want to make a record about what they were reversing. Can I ask you about the two-month window between the April 10 hearing and the beginning of trial? Why isn't that – why wasn't that a knowing – the decision to go to trial a knowing relinquishment of the claim that Miss Graham is bringing here today, seeking – it sounds like what they want is the government to reoffer the plan. It seemed like that – or the plan – the plea deal. It seems like that was something that could have been done during that window, and she chose instead to go to trial. Yes, Your Honor, I understand the question, and I don't know if I would style it as a knowing relinquishment, but I would style it as any potential prejudice was cured. I guess that's my question. I'm not framing it in terms of prejudice for 2255. I'm asking why it's not waiver. I'm not sure, as ineffective assistance, that can be raised for the first time in collateral review, so I'm not sure that the defendant was obligated to raise it at the time. But because this claim wasn't raised below, there is no record about the plea discussions that potentially – That's the point. It wasn't raised below. It wasn't – right. And we're sort of here. We're sort of trying to get inside the head, shadowboxing a little bit. I was counsel below. I'm aware of what plea negotiations occurred between April and May and what occurred at the reverse proffers and statements about the government's willingness to reopen that the quote-unquote expired plea offer. It sounds like you'd be a witness at the 2255 hearing. I think prior counsel would be a witness. I think I would potentially be a witness at a hearing. It would be a substantial hearing. It's not a light lift for an ineffective assistance claim. And in Doe, these things occur via 2255 all the time. Golanis was a unique case where there was strong evidence the defendant was prejudiced because that defendant indeed accepted the plea offer upon appointment of competent counsel. Here, in that two-month period, the exact opposite happened. The defendant did not accept the plea offer, and in fact there's record evidence that there were plea negotiations because in May, replacement counsel, who has never been alleged to have been ineffective, said there had been plea discussions and the defendant was asserting her innocence and was going to trial. What are the contested issues as far as the actual plea offer is concerned and what the defendant knew? I'm sorry, Your Honor. Was something conveyed to the defendant? Is there evidence from anybody that something was conveyed to the defendant about a plea offer? Yes, Your Honor. At the conference in April, defense counsel said that he had conveyed it in March. And then at that long conference in April that the government had requested the court schedule, at that conference there was an extensive discussion about the plea offer, the defendant reviewing it with counsel, and the judge encouraging the defendant to pursue plea discussions with the government. That was all at the record in the April conference. Then by May, it was confirmed in the record that plea discussions had occurred, but that the defendant was rolling the dice and going to trial as is, of course, her constitutional right. With my colleague's assent, I think your opposing counsel is going to talk a bit about the out-of-state statements by the lawyer. Can you address your position on those? Absolutely, Your Honor. And there was no abuse of discretion in Judge Roman's decision to admit that evidence. Here, the defendant's sole or main defense was that she did not know that her scheme was illegal. This evidence was showing that she was receiving e-mails telling her precisely that. So the probative value, that is the relevance and the importance of the evidence, was profoundly important here. In some of the cases that the defendant cited, talking about the 403 balancing where similar evidence was not admitted, it was not a similar showing of the high relevance and high importance of the evidence. In those cases, the evidence concerned the intent of the investigating agent. Here, this was the intent of the defendant, which she opened the door and made the focal point of her defense. The government took great pains not to admit this evidence for the truth of the matter. In fact, in its summation, page A991, the government made clear, it doesn't matter whether the statements in the e-mail got the law right. All that matters is that Jacqueline Graham is told. She's on notice. Notice is a permitted reason for this evidence. The next page of the summation, A992, she's on notice. Would you agree, though, that these red flag e-mails were perhaps more prejudicial than the information that was admitted in some of the other cases you cite, including Dupree and Insaldi? Your Honor, I think it's very similar to the Dupree evidence with 1E. In that case, those were red flag e-mails from investors making accusations of fraud, threatening law action, and it was admitted for permissible purpose there to show notice and to show the context for the response of e-mails by the defendant there. There was actually not even a 4-3 balancing in the opinion of the court showing how important it was to the case and the permitted purposes there. In our case, I think it's very similar red flag evidence. Is it prejudicial to the defendant? Certainly. All evidence the government seeks to admit a trial is prejudicial. But is it unfairly prejudicial? Balanced against the high probative value, and here the probative value was so high because the defendant had made this the centerpiece of her defense. I didn't know it was a fraud. Well, if you're receiving several e-mails telling you it's a fraud, that decimates that defense, and the government would have been prejudiced by the court precluding its admission, Your Honor. If the panel has no further questions, I'll sit down. Thank you. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. With respect to the issue just discussed, the decisions in Forrester and Reyes by this court are controlling. In Reyes, the court explained that whether such evidence may be received turns not merely on the delivery of a limiting instruction that the jury may be unable to follow, but on a more complex balancing of factors, and it gives a four-factor test. And those four factors are looked at here. They show that the out-of-court statement should have been precluded. The declaration by the out-of-court witness, a lawyer, addressed an important issue in the trial. He said that she was committing a federal crime, the crime that she was on trial for. It was made by a knowledgeable declarant, a lawyer whose testimony was praised by the cooperating witness as being a very good attorney in substance. The declarant, does the declarant testify at trial is the third factor. Here, obviously, the lawyer, Galgano, who wrote that e-mail to the cooperating witness, was not going to testify. There was no opportunity for cross-examination. And the final question is, are curative or limiting instructions effective? And it's hard to see how the testimony or the out-of-court statement that comes in here saying other people have gone to jail for what Jacqueline Graham is doing can be limited effectively. We're not denying that the government had the right. But it's under an abuse of discretion standard, though. Like, how do we, you know, admittedly, there's going to be some prejudice, and if I were your client, I'd be making the position that you did. Can you help me understand, like, why what you cite and what you're arguing actually suggests that the district court abused discretion? Sure. The district court abused discretion because the precise argument we're making here today was put to him on pages SA-47 to SA-57 in the supplemental appendix, and that it's an unusual thing in a trial to have an out-of-court statement or even, frankly, an in-court statement by a witness saying that the defendant has committed a crime and that people are getting convicted of federal crimes. And that was brought to the court's attention, and the judge nonetheless allowed this to come in. The limiting instruction was not even given immediately upon the discussion of the testimony. It was after the weekend that intervened in the trial. And so, you know, two or three days later, the jury was told, by the way, the accusation in the e-mail that, I mean, this is not what they were told in substance, but the jury is told, don't take that for the truth of the matter. But the allegation is that the defendant committed the crime for which she's on trial. So on those circumstances, just like in Forrester and Reyes, there was an abuse of discretion here. The Dupree case is nothing more than a victim of a crime saying, I was defrauded. That's very different than what we have here. An outside expert whose testimony, had it been offered as expert testimony, of course, never been allowed to be used at trial by the government in this way, comes in through this side door. And in a case where the issues of knowledge and intent were contested, it was prejudicial to our client. I see my time is up. I'm happy to address any questions on this or the ineffectiveness of this claim. Let me answer why even if this was error, it wasn't harmless. Sure. Because there was such substantial evidence, including out of the defendant's own mouth, about her guilt. And effective admissions throughout the case. So, Your Honor, this was not as overwhelming a case before the trial as it looks after the trial. The government said there were something like 40 victims of the crime. They called three at trial. Only one of them actually knew the defendant, Jacqueline Graham. There were two cooperating witnesses, one of whom never even mentioned Graham when she was initially debriefed. The other one has all sorts of truth-telling problems. What's the difference? I mean, if it looks worse for her after the trial, which it normally does because she's already convicted, why isn't that the standard in terms of assessing whether any error was harmless? What I meant by that, Your Honor, was that once we see the conviction, it's easy to say it was inevitable. But there was nothing inevitable based on the evidence that was offered at trial about this conviction. It came down essentially to the testimony of one very damaged cooperating witness and one victim. What about her own statements? Her own statement, Your Honor, is one that I think was effectively challenged through cross-examination as not sounding like the statement that a normal human being would make. According to the government, the statement she made was, I used the mails and wire to make communications. That sounds like an agent talking, not a witness talking, not a defendant making a confession in her own words. So it's true there was a confession, but it wasn't the type of confession that you see in many cases where, you know. She was one of the three principals of the Terra Foundation. Our business became involved in illegal activity, which included fraudulent mortgage discharges, preparation of filing UCC documents, and preparation of lien documents in furtherance of a fraud. I don't know. Maybe that's not persuasive from your perspective. I mean, it's a matter of opinion, to be fair. But in furtherance of a fraud, do people talk like that when being, you know, brought by police officers or federal agents to explain themselves? It just seems like an unusual way for a normal person to communicate. It looks like something that was written by an agent. Most people try and cover up their activity. But the point is this. This was not an overwhelming case. In a case like this, to have an out-of-court statement by a lawyer who's praised by a witness as an excellent lawyer, or what does he say, a very good criminal lawyer, and say people have gone to jail for what Graham did, that is an unusually prejudicial statement. It's much more than what we see in Dupre with one E. I know I'm over my time, and I appreciate your allowing me to do so. Thank you. Thank you both. We'll take the case under advisement. That concludes our arguments for today. The last case is on submission, so I'll ask the courtroom deputy to adjourn.